STATE OF MAINE                          BUSINESS AND CONSUMER COURT
CUMBERLAND, ss                          Location: Portland
                                        Docket No.: BCD-AP-11-02        ✔
                                        JCN-Cum- 10/31/2012

MALLINCKRODT US, LLC and        )
UNITED STATES SURGICAL CORP.,   )
                                )
                                )
                Petitioners,    )
                                )       **DECISION AND ORDER**
        v.                      )
                                )
MAINE DEPARTMENT OF             )
ENVIRONMENTAL PROTECTION,       )
                                )
                Respondent      )
                                )

This matter is before the Court on Petitioners' request for judicial review of the August

19, 2010, Findings of Fact and Order on Appeal (the Order) of the Maine Board of

Environmental Protection Board (the Board). (Administrative Record [hereinafter, "A.R."]

344.)[1] Through the Order, the Board required Petitioners (Mallinckrodt) to remediate the former

HoltraChem site (the Site) in Orrington, Maine.

## FACTUAL AND PROCEDURAL BACKGROUND

The Site is located along the Penobscot River, and consists of approximately 77

contaminated acres. As the result of the operation of a chemical manufacturing plant, the Site

was contaminated with various hazardous substances, including mercury, chloropicrin, carbon

---

[1] The administrative record was submitted to the Court in electronic format on an external hard drive. The decision identifies documents in the record by the document number listed in the separately index and then by the page number of the electronic document where applicable.

tetrachloride, and tetrachloroethene. Although at first the plant diverted the chemicals into the river, the plant subsequently deposited the waste into five landfills on the Site.

On November 24, 2008, the Commissioner of the Maine Department of Environmental Protection (the Department), citing the Uncontrolled Hazardous Substance Sites Law (UHSSL), 38 M.R.S. §§ 1361-71 (2011), issued an order requiring Mallinckrodt to clean up the Site. On December 19, 2008, Mallinckrodt appealed to the Board from the Commissioner's order.

Prior to a final de novo hearing, the Board conducted several conferences during which the Board considered and addressed various procedural issues. As the result of the prehearing conferences, the Board issued thirteen procedural orders. In accordance with the orders, both parties filed direct and rebuttal pre-hearing testimony. In January and February of 2010, the Board conducted a nine-day, de novo evidentiary hearing. During the hearing, the parties presented witnesses, cross-examined witnesses, and filed a number of exhibits.

On August 19, 2010, the Court issued the Order through which the Board modified the Commissioner's order. While the Commissioner had ordered the removal of all five of the landfills, the Board ordered the removal of two of the landfills.

In the present matter, Mallinckrodt maintains that the Board made various errors of both law and fact. Among its arguments, Mallinckrodt contends that the Board failed to adopt appropriate rules for the proceeding, improperly included and excluded certain evidence (including evidence of bias and political prejudice), and failed to apply the appropriate criteria prior to issuing its remediation order. Mallinckrodt also argues that the Board's findings are not supported by substantial evidence on the record, and that the proceeding did not comply with due process requirements.

## DISCUSSION

I.  STANDARD OF REVIEW

In an appeal of final agency action brought pursuant to M.R. Civ. P. 80C, the court reviews "the agency's decision for errors of law, abuse of discretion, or findings not supported by substantial evidence in the record." *Beauchene v. Dep't of Health & Human Servs.*, 2009 ME 24, ¶ 11, 965 A.2d 866, 870 (quotation marks omitted); *see also Seider v. Bd. of Exam'rs of Psychologists*, 2000 ME 206, ¶ 8, 762 A.2d 551, 555. On appeal, the court may affirm the decision, 5 M.R.S. § 11007(4)(A) (2011), remand for further proceedings, 5 M.R.S. § 11007(4)(B) (2011), or:

> [r]everse or modify the decision if the administrative findings, inferences, conclusions or decisions are:
>
> (1)  In violation of constitutional or statutory provisions;
> (2)  In excess of the statutory authority of the agency;
> (3)  Made upon unlawful procedure;
> (4)  Affected by bias or error of law;
> (5)  Unsupported by substantial evidence on the whole record; or
> (6)  Arbitrary or capricious or characterized by abuse of discretion.

5 M.R.S. § 11007(4)(C) (2011).

"The court shall not substitute its judgment for that of the agency on questions of fact." 5 M.R.S. § 11007(2) (2011). Factual findings must be affirmed if "they are supported by substantial evidence in the record, even if the record contains inconsistent evidence or evidence contrary to the result reached by the agency." *Concerned Citizens to Save Roxbury v. Bd. of Envtl. Prot.*, 2011 ME 39, ¶ 24, 15 A.3d 1263 (quotation marks omitted). Substantial evidence is "any competent evidence in the record to support a finding" based upon a review of the entire record to determine whether "the agency could fairly and reasonably find the facts as it did." *Id.* "An agency's findings of fact will be vacated only if there is no competent evidence in the record

3

to support a decision." *Id.* ¶ 24, 15 A.3d 1263 (quotation marks omitted). Credibility determinations of witnesses are within the exclusive province of the Administrator as fact finder. *See Sprague Elec. Co. v. Me. Unemp't Ins. Comm'n*, 544 A.2d 728, 732 (Me. 1988).

II.    ANALYSIS

A.    UHSSL Statutory issues:  5 M.R.S. § 11007(4)(C)(1)

Mallinckrodt raises a series of argument related to the statutory requirements of UHSSL.

1.    *Commissioner's Authority pursuant to the section 1365 of the UHSSL*

Mallinckrodt maintains that pursuant to 38 M.R.S. § 1365, the Commissioner did not have the authority to issue an order requiring a long-term clean up of a hazardous site. Instead, Mallinckrodt argues, the Commissioner's ability to issue an order requiring the remediation of a site is limited to matters that require immediate attention. According to Mallinckrodt, in order to obtain a long-term remediation order, the Department must commence an action in Superior Court.

Section 1365 provides, in pertinent part:

**1. Investigation.** Upon finding, after investigation, that a location at which hazardous substances are or were handled or otherwise came to be located may create a danger to the public health, to the safety or any person or to the environment, the commissioner may:

**A.** Designate that location as an uncontrolled hazardous site;

**B.** Order any responsible party dealing with the hazardous substances to cease immediately or to prevent that activity and to take an action necessary to terminate or mitigate the danger or likelihood of danger; and

**C.** Order any person contributing to the danger or likelihood of danger to cease or prevent that contribution.

. . . .

**4. Compliance; appeal.** The person to whom the order is directed shall comply immediately and may apply to the board for a hearing on the order if the

4

application is made within 10 working days after receipt of the order by a responsible party. Within 15 working days after receipt of the application, the board shall hold a hearing, make findings of fact and vote on a decision that continues, revokes or modifies the order. That decision must be in writing and signed by the board chair using any means for signature authorized in the department's rules and published within 2 working days after the hearing and vote. . . .

. . . .

**5. Civil action.** The Attorney General may file suit in Superior Court to compel any responsible party to abate, clean up or mitigate threats or hazards posed or potentially posed by an uncontrolled site.

38 M.R.S. § 1365(1), (4), (5).

Simply stated, the plain language of the UHSSL does not support Mallinckrodt's argument. Not insignificantly, the UHSSL does not define the Commissioner's authority based on the urgency presented by a particular situation. Similarly, section 1365(4), which authorizes the filing of a civil action in Superior Court, does not distinguish between an urgent matter, and one for which a long-term solution is necessary. Under a logical reading of the UHSSL, the Commissioner has the authority to issue an order that requires a responsible party to remediate a hazardous condition regardless of the urgency of the situation. If a responsible party fails to comply with the Commissioner's order, § 1365(4) authorizes the Attorney General to file suit to enforce the Commissioner's order.

### 2. *Responsible Party*

Mallinckrodt argues that the Board read various portions of the UHSSL incorrectly, and thus did not apply the required criteria that Mallinckrodt was "dealing with hazardous substances" when assessing whether Mallinckrodt was a responsible party. *See* 38 M.R.S. § 1365(1)(B). The Department argues that the statute does not require a person to be dealing currently with the hazardous substance in order to be deemed a responsible party. Responsible

5

party is defined by statute: either "[t]he owner or operator of the uncontrolled site," or "[a]ny person who owned or operated the uncontrolled site from the time any hazardous substance arrived there." 38 M.R.S. § 1362(2)(A), (B). Further, the Court does not read section 1365(1)(B) as limiting "responsible parties" under the statute to those who are presently dealing with the hazardous substances.

To limit responsibility to those who are dealing with hazardous substances at the time of the Commissioner's order would absolve persons designated as responsible parties not presently in control of the site from any responsibility to terminate or mitigate the danger from hazardous substances, which result would be contrary to the Legislature's stated intentions in 38 M.R.S. § 1361: "adequate measures must be taken to ensure that the threats posed by uncontrolled hazardous substance sites are abated, cleaned up or mitigated promptly." The better reading of the statute is that the Commissioner may "order any responsible party dealing with the hazardous substance to cease immediately or to prevent that activity [*or*] to take an action necessary to terminate or mitigate the danger or likelihood of danger." 38 M.R.S. § 1365(1)(B); *accord* 1 M.R.S. 71(2) (2011) ("The words 'and' and 'or' are convertible as the sense of the statute my require."). The Commissioner and the Board may "order any responsible party . . . to take an action necessary to terminate or mitigate the danger or likelihood of danger." 38 M.R.S. § 1365(1)(B). The Board thus applied the correct standard, and its findings are in accordance with the statute.

3. *RCRA*

Mallinckrodt asserts that the Board applied an improper standard in determining whether the Commissioner's order was "necessary," as required by UHSSL. *See* 38 M.R.S. § 1365(1)(B). Mallinckrodt argues that the Board should have applied the 11 so-called RCRA

6

factors, which are 11 criteria promulgated by the EPA derived from the Recourse Conservation and Recovery Act (RCRA), 42 U.S.C.S. § 6901 et seq. (LexisNexis 2010). Mallinckrodt points to two basis statements, one from 2002 and one from 2008 (A.R. 1442, 1479), in which the Department indicated that the decision about the cleanup of the Site would be based on the 11 RCRA factors. In issuing its decision, however, the Board did not require compliance with the 11 RCRA factors. Rather, the Board viewed them as issues that the Board should consider when it established the basis for the order, but not criteria that must be satisfied. (A.R. 344 at 8-9.) Mallinckrodt argues that the Board's failure to mandate compliance with all of the factors is error.

The Court disagrees. As the Department notes, use of the 11 RCRA factors is not mandated by the UHSSL. On an appeal to the Board, the Commissioner must establish the basis for the order. As discussed above, the Commissioner satisfied that requirement. In this case, the Board must establish the basis of its order. Thus, the Department must demonstrate that: 1) Mallinckrodt is a responsible party pursuant to the UHSSL, *see* 38 M.R.S. § 1362(2); 2) hazardous substances are located at the site in question; 3) the hazardous substances at the site may create a danger to the public health or safety; and 4) the order is necessary to terminate or mitigate danger or the likelihood of danger. *See* 38 M.R.S. § 1365. The UHSSL does not require strict application of the RCRA factors or satisfaction of the RCRA factors. The RCRA criteria are simply factors that the Board can permissibly consider when assessing whether the Site contains hazardous substances, whether the Site poses a threat to public health and safety, and whether the proposed remediation measures are necessary to ameliorate the situation. The Board thus did not err by considering, but not mandating the satisfaction of the RCRA factors.

7

4. *Use of post hoc evidence as basis for the Order*

Mallinckrodt maintains that because the Department had the burden to prove the basis of the Commissioner's order, the Board erred when it permitted the introduction of "new information as a post-hoc rationalization for the basis of [the Commissioner's] Order." (Pet.'s Br. 37). According to Mallinckrodt, when it allowed the Commissioner to present evidence that was not available or was not considered at the time the Commissioner issued his decision, the Board effectively altered the burden of proof.

Contrary to Mallinckrodt's argument, the Board required the Commissioner to establish the basis of his order and thus complied with the applicable burden of proof. The record reflects that the Commissioner presented evidence of the Commissioner's decision and the reason therefor. The Board did not simply assume or speculate as to the reasons for the Commissioner's order. Rather, in its decision, the Board set forth the substance of the Commissioner's various conclusions, and discussed and analyzed the Commissioner's reasoning. Consistent with the requirements of 38 M.R.S. § 1365(4),[2] for each of the Commissioner's conclusions, therefore, the Board also considered and assessed Mallinckrodt's challenges to the Commissioner's order.

Importantly, none of the applicable statutes limits the relevant evidence in the proceeding before the Board to the evidence that was available to and considered by the Commissioner. Such a rule would be inconsistent with the de novo hearing that the Board was required to conduct. In other words, the fact that the Board permitted both parties to introduce evidence that was relevant to the Board's determination of the appropriate means by which the Site should be

---

[2]  38 M.R.S. § 1365(4) (2011) provides in pertinent part: "At the hearing, all witnesses must be sworn and the commissioner shall first establish the basis of the order and for naming the person to whom the order is directed. The burden of going forward then shifts to the person appealing to demonstrate, based upon a preponderance of the evidence, that the order should be modified or rescinded."

8

cleaned up, regardless of whether the evidence was available to the Commissioner at the time he issued his decision, is in accordance with the principles of a de novo hearing.

To prohibit the Board from considering relevant evidence that might have been generated or made available after the date of the Commissioner's order would not only be contrary to the concept of a de novo hearing, but could also result in decisions that would not provide "for the prompt and effective planning and implementation of plans to abate, clean up or mitigate threats posed or potentially posed by uncontrolled sites." 38 M.R.S. § 1361. If the Court were to adopt Mallinckrodt's reasoning, the Board would have to disregard relevant, reliable information that was potentially critical to the public safety simply because the information was not available to the Commissioner. Logic suggests that the Legislature did not contemplate or intend such a result.

5.     *Failure to define UHSSL terms*

Mallinckrodt also asserts that the Board erred by not defining key terms in the statute, including "necessary," "terminate," "mitigate," and "danger." Because there were no rules or regulations interpreting the statutory provision, Mallinckrodt contends that the Board had no standards by which to determine whether the evidence met the statutory requirements.

Preliminarily, the Board was not required to define all of the terms in the statute prior to the hearing. As the Law Court has stated with respect to administrative agencies:

As part of its adjudicative responsibility, the Board had the obligation to apply the statute that was at issue in the proceeding. When a party to an agency adjudicative proceeding raises a question about a statute's meaning or scope and the statute is one administered by the agency, the agency must interpret it if the interpretation is necessary to the adjudicative decision. Agencies are not required to promulgate rules defining every statutory term that might be called into question. They are expected to apply statutes within their expertise as cases arise.

9

*Cobb v. Bd. of Counseling Prof'ls Licensure*, 2006 ME 48, ¶ 24, 896 A.2d 271. In this case, Mallinckrodt has not identified any prejudice resulting from the Board's failure to define "necessary" or any other word in advance of the hearing.

Further, a statute must not be read in isolation, but "in the context of the statutory and regulatory scheme." *Conservation Law Found. v. Dep't of Envtl. Prot.*, 2003 ME 62, ¶ 23, 823 A.2d 551. That is what the Board did in this case:

> The word "necessary" is a common word that is well within the realm of understanding of the Board and the parties. . . . It is clear from reading the statute that the Board must engage in a factual analysis of the type and volume of hazardous substances on site; the location of these substances in relation to ground water, surface water, land and air; the present and future physical and chemical interaction of the substances with and transport through these media; and the present and future risk to public health, safety and the environment. It is this factual analysis that leads to a determination of what remedy is "necessary" to protect public health, safety and the environment.

(A.R. 344 at 11.) Implicit in the Board's decision is that "necessary" contemplates what is required under the circumstances after considering all the relevant evidence and law. The Board's interpretation is wholly consistent with the implementation of the Legislature's stated findings and purpose in enacting the UHSSL:

> The Legislature finds and declares that uncontrolled hazardous substance sites within the jurisdiction of the State present a hazard to all the people of the State and that hazard poses a threat or potential threat to the public health, safety or welfare, to the environment of the State and to owners and users of property near or adjacent to uncontrolled sites.
>
> The Legislature further finds that adequate measures must be taken to ensure that the threats posed by uncontrolled hazardous substance sites are abated, cleaned up or mitigated promptly.

38 M.R.S. § 1361. Neither the lack of definition of the terms in the UHSSL, nor the fact that the Board did not define the terms by rule prior to the adjudicatory hearing is error.

10

B.     Procedural Issues:  5 M.R.S. § 11007(4)(C)(3)

Mallinckrodt identifies a number of procedural issues that it contends rendered the Board's decision-making unlawful. *See* 5 M.R.S. § 11007(4)(C)(3).

### 1.     *Failure to adopt procedural rules*

Mallinckrodt argues that because the Board did not adopt formal rules of practice governing UHSSL proceedings prior to the hearing, the Board's decision is void for failure to comply with mandatory rulemaking provisions of the Administrative Procedures Act (APA), 5 M.R.S. §§ 8001-11008 (2011).  Mallinckrodt points to 5 M.R.S. § 8051, which states: "In addition to other rule-making requirements imposed by law, each agency shall adopt rules of practice governing the conduct of adjudicatory proceedings, licensing proceedings, and the rendering of advisory rulings, except to the extent that such rules are provided by law." Because the UHSSL proceeding was adjudicatory in nature, Mallinckrodt asserts that the Board should have adopted formal rules of procedure to govern the proceeding before continuing with the review of the commissioner's decision, citing *Fournier v. State of Maine Harness Racing Commission*, 1983 Me. Super. LEXIS 167 (Sept. 16, 1983) (Alexander, J.), and *Hubbard v. Marriot*, 1989 Me. Super. LEXIS 177 (Aug. 31, 1989), in support.

The Department, on the other hand, contends that the APA provides sufficient guidance on the conduct of adjudicatory proceedings and that 38 M.R.S. § 1365(4) provides further procedural guidelines.  The Department argues that the Board may establish unique procedures tailored to the needs of particular cases, and that in present case, the Board provided comprehensive guidance through procedural orders, which were issued only after receiving input from the parties.  Finally, the Department notes that the APA grants the Department the discretion to vary any agency rule as long as no prejudice results, *see* 5 M.R.S. § 9053(4), and

11

that the APA only requires rules of practice "except to the extent rules are provided by law," 5 M.R.S. § 8051.

Mallinckrodt counters that "except to the extent rules are provided by law" means that an administrative agency may not use their rule-making authority to deviate from applicable statutory requirements, and that it was not intended to be a general exception to the mandatory duty to adopt rules of practice. Mallinckrodt further argues that even if the Department is correct, the APA only has minimal standards applicable to adjudicatory proceedings and the guidelines in section 13654(4) are not rules of practice. Finally, Mallinckrodt asserts that the issue for the Court is not whether ad hoc procedures may be appropriate in particular cases, but 1) whether the Board was required to adopt rules of practice, and 2) if so, whether the resulting order is valid because it relied exclusively on ad hoc procedures.

Although rules of procedure specific to UHSSL proceedings may be the preferred practice, the Department's failure to adopt specific rules prior to this case is not fatal to the Board's decision. The essence of the appeal process is set forth in section 1365:

> **4. Compliance; appeal.** The person to whom the order is directed shall comply immediately and may apply to the board for a hearing on the order if the application is made within 10 working days after receipt of the order by a responsible party. Within 15 working days after receipt of the application, the board shall hold a hearing, make findings of fact and vote on a decision that continues, revokes or modifies the order. That decision must be in writing and signed by the board chair using any means for signature authorized in the department's rules and published within 2 working days after the hearing and vote. The nature of the hearing before the board is an appeal. At the hearing, all witnesses must be sworn and the commissioner shall first establish the basis for the order and for naming the person to whom the order is directed. The burden of going forward then shifts to the person appealing to demonstrate, based upon a preponderance of the evidence, that the order should be modified or rescinded. The decision of the board may be appealed to the Superior Court in accordance with Title 5, chapter 375, subchapter 7.

38 M.R.S. § 1365(4). The timing of the appeal and the hearing, the nature of the proceeding, the shifting burden of proof, and the availability of judicial review are clearly set forth in the UHSSL. The UHSSL, therefore, provides Mallinckrodt and other potential responsible parties with notice of the governing process. Additionally, the hearing before the Board is subject to the requirements of the APA for adjudicatory proceedings that providing further notice to the parties of the process by which the hearing will be governed. *See* 5 M.R.S. §§ 9051-64 (detailing procedural requirements for adjudicatory hearings).

Consistent with the fact that the UHSSL, the APA, and the Board's numerous procedural orders adequately informed the parties of the governing rules of the process, Mallinckrodt has been unable to point to a single example of prejudice that it experienced as the result of the process. Indeed, the approach that the Board followed afforded Mallinckrodt the opportunity to shape the procedural process. The Board Chair provided Mallinckrodt with adequate notice and an opportunity to be heard on each procedural order, and Mallinckrodt had the opportunity to appeal procedural orders entered by the Chair to the entire Board. As explained by the Law Court, "[i]n the absence of a controlling agency rule or a contrary requirement of statutory and constitutional law, the procedure adopted by an administrative agency in any particular case should receive the deferential respect of a reviewing court." *Town of Wiscasset v. Bd. of Envtl. Prot.*, 471 A.2d 1045, (Me. 1984). In sum, the Court concludes that by declining to adopt formal rules before the UHSSL proceeding, the Board did not engage in an improper or unlawful procedure.

### 2. *Exclusion of evidence*

Mallinckrodt contends that the Board erred when it denied Mallinckrodt's request to introduce evidence of bias or political bias. In accordance with its mandate, the Board undertook

13

an independent review of the evidence presented at the hearing, and afforded no deference to the Commissioner's reasoning or decision. *See* 38 M.R.S. § 1365(4).) For instance, when describing its task, the Board wrote, "[i]n its review of the Commissioner's Order, the Board must determine whether 'hazardous substances are or were handled or otherwise came to be located' at the Site that 'may create a danger to the public health, to the safety of any person or to the environment.'" (A.R. 344 at 14 (quoting 38 M.R.S. § 1365(1).) Similarly, when evaluating the remedial options, the Board observed that the "Board must find that the ordered remedy is 'necessary to terminate or mitigate the danger or likelihood of danger' to 'the public health, to the safety of any person or to the environment.'" (A.R. 344 at 25 (quoting 38 M.R.S. § 1365(1).) Because the Board conducted a de novo hearing to determine the technical and scientific basis for the Commissioner's order, the Board's decision to exclude the evidence was within its discretion based on the scope of the hearing. *See* 38 M.R.S. § 1365(4). Because the Court concludes that the Board properly excluded evidence of bias, the Court also denies Mallinckrodt's motion to take additional evidence.[3]

### 3. *Cross-examination of Board staff and consultants*

Mallinckrodt next argues at length that certain Board staff and consultants presented expert testimony to the Board in violation of due process because Mallinckrodt did not have the opportunity to cross-examine these witnesses.[4] The individuals in question are Robert Gerber, an outside consultant hired by the Board, and Jeff Crawford, a Department environmental specialist. While the Court recognizes that ordinarily witnesses presenting evidence to the Board must be

---

[3] At an earlier stage in this proceeding, Mallinckrodt moved to take additional evidence on the issue of bias and political bias. The Court denied the motion at that time, but left open the possibility that additional evidence might be warranted upon a full review of the record. The Court concludes, consistent with its previous ruling, that additional evidence is not required.

[4] The Court agrees with Mallinckrodt that this issue has been preserved for review.

subject to cross-examination, *see* 5 M.R.S. § 9056(2), the Court does not consider Mr. Gerber and Mr. Crawford to be expert witnesses who testified before the Board.

The documents prepared by Mr. Gerber and Mr. Crawford consist of summaries of evidence that had already been presented to the Board. In the Court's view, this is the type of advisory role contemplated by the APA. *See* 5 M.R.S. § 9055(2)(B); *Forest Ecology Network v. Land Use Regulation Comm'n*, BCD-WB-AP-09-37, at 8-9 (Me. Super. Ct., May 26, 2010) (Humphrey, C.J.). (A.R. 324.) Similarly, the Crawford excerpts cited by Mallinckrodt are in fact part of the Board's deliberative sessions where Mr. Crawford was advising the Board based on submitted evidence, not providing separate, independent "testimony." The Court concludes that neither Mr. Crawford, nor Mr. Gerber provided expert testimony to the Board for which the parties should have been afforded the opportunity to cross-examine. Accordingly, the Board did not err when it did not allow the parties to examine Mr. Crawford and Mr. Gerber.

### 4. *Other procedural issues related to witnesses*

Mallinckrodt also raises several challenges with respect to witnesses and testimony. Mallinckrodt first asserts that it was not permitted to challenge the credentials of expert witnesses, resulting in "patently unqualified witnesses" being allowed to offer expert opinions on highly technical matters. Mallinckrodt does not, however, identify a witness that it sought to challenge as unqualified to testify, or the way in which Mallinckrodt was prejudiced by the witness's testimony. In addition, despite its argument, Mallinckrodt had the opportunity to and did move to strike pre-filed testimony. (*See* A.R. 221.) Thus, Mallinckrodt not only had the ability to challenge witnesses' testimony, but it in fact challenged the testimony of certain witnesses.

15

Mallinckrodt also argues that it was prejudiced by the Board's ruling that prevented the parties from using at the hearing documents for impeachment unless the documents were designated as exhibits before the hearing. Once again, Mallinckrodt has not identified any document that it attempted to use at the hearing, but was precluded from doing so. More importantly, the Board's order does not state that only documents identified as exhibits could be used for impeachment purposes. The Eleventh Procedural Order states that it is unlikely that additional documents for sur-rebuttal would be allowed at the hearing, but that a party could request admission of additional documents in writing before the hearing or orally at the hearing. (A.R. 221 at 7.). The record does not reflect that Mallinckrodt proposed the use of any such documents.

Mallinckrodt further objects to the use of simultaneous pre-filed testimony as it relates to the burden of proof because Mallinckrodt was required to dispute the basis for the Commissioner's order before it knew whether there was in fact a basis for the order. The APA specifically permits an agency to require the filing of pre-filed testimony "for the purpose[] of expediting adjudicatory proceedings" as long as the witness is available for cross-examination. *See* 5 M.R.S. § 9057(4) (2011). By permitting the parties to submit and rely on the pre-filed testimony, the Board did not deprive Mallinckrodt of due process.

Finally, Mallinckrodt asserts that it was prejudiced by "arbitrary time limitations on direct and cross-examination" at the hearing. However, Mallinckrodt does not identify any witness for whom more extensive examination was wanted, but rejected. Management of the hearing, including the imposition of limits on the length of witnesses' testimony, is within the discretion of the Board. The Court perceives no abuse of that discretion.

16

C.      Constitutional Issues: 5 M.R.S. § 11007(4)(C)(1)

Mallinckrodt also challenges the Board's decision on constitutional grounds. *See* 5 M.R.S. § 11007(4)(C)(1). In particular, Mallinckrodt asserts that the Board erred by refusing to allow Mallinckrodt to introduce evidence on its as applied due process arguments, and that the Board erred by failing to find 38 M.R.S. § 1365 void for vagueness.

1.      *Due process*

Mallinckrodt contends that the Board was not an impartial decision-maker, thus violating the requirements of due process. *See Ward v. Village of Monroeville*, 409 U.S. 57, 61 (1972); *cf. Ingerson v. State*, 491 A.2d 1176, 1180-81 (Me. 1985). At the hearing, Mallinckrodt contends it sought to introduce evidence of 1) the allegedly conflicting roles of the assistant attorney generals who both prosecuted the case and have advised the Board in the past; 2) the Board's reliance on technical staff; and 3) the alleged financial stake of the Board in the outcome of the hearing. The Board refused to allow Mallinckrodt to present such evidence, focusing on the technical and scientific basis for the remedial order. Mallinckrodt argues that the Board erred in refusing to allow it to present the aforementioned evidence and then by rejecting Mallinckrodt's due process arguments on the merits. (A.R. 344 at 11-12.)

The Court previously addressed some of these arguments in this decision. More specifically, the Court concluded that the appropriate scope of the hearing was limited to the technical and scientific basis for the remedial order consistent with 38 M.R.S. § 1365, and thus excluding evidence of bias is not error. The Court is convinced that because of the unique nature of the Attorney General's office in pursuing the public interest, *see Superintendent of Ins. v. Attorney General*, 557 A.2d 1197, 1202 (Me. 1989), assistant attorney generals do not violate ethical rules or violate constitutional due process requirements by serving as prosecutor and

17

advisor to the same agency in two separate proceedings. Indeed, "[a] combination of investigative and adjudicatory functions in administrative proceedings generally does not violate due process absent some further showing of bias or the risk of bias." *Zegel v. Bd. of Soc. Worker Licensure*, 2004 ME 31, ¶ 16 n.3, 843 A.2d 18. Simply, the Court does not find any violation of due process in the Board's actions.

### 2. *Void for vagueness*

Mallinckrodt contends that "necessary," as used in 38 M.R.S. § 1365(1), is unconstitutionally vague because it is not defined in the statute and the Department has not promulgated rules to inform potential responsible parties as to the action that would be "necessary to terminate or mitigate the danger or likelihood of danger" at a site. Mallinckrodt also asserts that the Board erred by not defining key terms in the statute, including "necessary," "terminate," "mitigate," and "danger." Mallinckrodt's constitutional challenge to the statute is a facial challenge, not an as applied challenge.

"[A] statute is vague 'when its language either forbids or requires the doing of an act in terms so [indefinite] that people of common intelligence must guess at its meaning, or if it authorizes or encourages arbitrary and discriminatory enforcement.'" *Uliano v. Bd. of Envtl. Prot.*, 2009 ME 89, ¶ 15, 977 A.2d 400 (quoting *Town of Baldwin v. Carter*, 2002 ME 52, ¶ 10, 794 A.2d 62). A statute is "void for vagueness when [it fails] to furnish a guide which will enable those to whom the law is to be applied to reasonably determine their rights thereunder[] and [assure] that the determination of those rights will not be left to the purely arbitrary discretion of the administrat[ive agency]." *Rangeley Crossroads Coal. v. Land Use Regulation Comm'n*, 2008 ME 115, ¶ 12, 955 A.2d 223 (quotation marks omitted) (last alteration in original).

18

A party asserting a statute is unconstitutional bears a heavy burden: "To prevail against the presumption that every statute is constitutional, . . . the parties challenging the statute[] must demonstrate convincingly that the statute and the Constitution conflict. [A]ll reasonable doubts must be resolved in favor of the constitutionality of the statute." *Godbout v. WLB Holding, Inc.*, 2010 ME 46, ¶ 5, 997 A.2d 92 (quotation marks and citation omitted). As noted by the Board, "'necessary' is a common word that is well within the realm of understanding of the Board and the parties." *See Forest Ecology Network v. Land Use Regulation Comm'n*, 2012 ME 36, ¶ 33, 39 A.3d 74 (reiterating that words in a statute must be given their plain and ordinary meaning). Particularly given the statute's purpose, use of the word "necessary" does not render the statute vague.

Additionally, contrary to Mallinckrodt's argument, the statute does not give the Board unfettered discretion. Legislation is not an unconstitutional delegation of authority as long as there are

> sufficient standards -- specific or generalized, explicit or implicit to guide the agency in its exercise of authority so that (1) regulation can proceed in accordance with basic policy determinations made by those who represent the electorate and (2) some safeguard is provided to assist in preventing arbitrariness in the exercise of power.

*Lewis v. Dep't of Human Servs.*, 433 A.2d 743, 747 (Me. 1981). The Legislature's stated purpose in enacting the UHSSL provides the basic policy determinations and 38 M.R.S. § 1365 and the APA provide the necessary safeguards to prevent arbitrariness. The statute is thus not an unconstitutional delegation of legislative authority.

E.     Adequacy of Findings/Sufficiency of the Evidence: 5 M.R.S. § 11007(4)(C)(5)

Mallinckrodt argues that the Board did not adequately articulate its findings, and that the findings do not support the Board's decision. Mallinckrodt thus contends that the Board failed to

19

provide explicit reasoning for its decision, and that the Board's decision is not supported by substantial evidence on the record.

First, to the extent that Mallinckrodt maintains that the Board's findings are insufficient to inform the parties of the bases of the Board's decision, Mallinckrodt's argument is unpersuasive. In its decision, the Board reviewed and considered the Commissioner's remediation order, and made particular findings as to each aspect of the order. For instance, regarding the need to remove Landfill 2, the Board, after making specific findings on the issue, wrote,

> The Board finds that the removal of Landfill 2 is necessary to terminate or mitigate the danger or likelihood of danger to public health and safety and the environment from the hazardous substances present in this landfill. The Board bases its conclusions on the factual findings as set forth above, particularly the nature of the wastes placed in the landfill, the mercury measured in the geoprobe borings, the mercury found in the sediment downstream of this landfill, the undisputed need to isolate wastes from ground and surface waters, the fact that the landfill is located in a topographic depression and the waste is in contact with groundwater at certain time of the year, the lack of a synthetic cover, the location of the landfill directly adjacent to the Southerly Stream, and the groundwater flow routes. The Board is not persuaded that Mallinckrodt's proposal to install a new cap, a sheet pile wall, and a geomembrane cover underneath Southerly Stream is sufficient to protect public health and safety and the environment.

(A.R. 344 at 34-35.) Upon completion of that analysis, the Board reached the following conclusions:

1. The persons to whom the Commissioner's Order is directed, United States Surgical Corporation and Mallinckrodt LLC, are responsible parties under the Uncontrolled Sites Law.

2. Hazardous substances, including but not limited to mercury, carbon tetrachloride, and trichloroethylene, are or were handled or otherwise came to be located at the former HoltraChen Site in Orrington, Maine.

3. The hazardous substances at the Site may create a danger to the public health, to the safety of any person or to the environment.

20

4. The ordered remedial action, as modified by this Decision, is necessary to terminate or mitigate the danger or likelihood of danger posed by the hazardous substances at the Site to the public health, to the safety of any person or to the environment.

(A.R. 344 at 53.) In short, the Board's findings, such as set forth above, are more than sufficient to satisfy the Board's statutory requirement that its decisions "include findings of fact sufficient to apprise the parties . . . of the basis for the decision." 5 M.R.S. § 9061.[5]

The Board engaged in a similar analysis for each portion of the Board's remediation order. Based on its findings, the Board modified and upheld the Commissioner's order. Among the most significant modifications to the Commissioner's order, the Board ordered the removal of only two of the five landfills.[6] In other words, after analyzing the hazards on the Site, and the remediation ordered by the Commissioner, the Board independently assessed the various remediation options, and issued a remediation order that was different from that of the Commissioner. Given this process and the findings of the Board regarding the remediation options, the Court is convinced that the Board satisfied its obligation to conduct a de novo hearing, and consider the evidence without any deference to the Commissioner.

Nevertheless, Mallinckrodt asserts that the following findings or conclusions by the Board are not supported by substantial evidence on the record:

- removal of Landfill 2;

- replacing the caps on Landfills 3, 4, and 5;

- mandatory groundwater sampling and monitoring;

---

[5] As explained above, Mallinckrodt also argues that the Board improperly considered evidence that the Commissioner did not necessarily consider when the remediation order was issued. This argument is equally unconvincing. The appeal to the Board was a de novo proceeding, during which the Board would determine whether the remedy ordered by the Commissioner was justified. The Board's decision is based on the evidence presented during the de novo proceeding, and is not limited to the evidence presented to the Commissioner. If the review were to be limited as Mallinckrodt urges, a de novo hearing would not be necessary.

[6] The Commissioner had ordered the removal of all five of the landfills. The Board ordered the removal of Landfills 1 and 2.

21

- independent oversight position

- additional studying and modeling of the Site; and

- sequencing of remedial activities.

Mallinckrodt in part contends that the appropriate standard by which to evaluate each remedy is whether it was "necessary to terminate or mitigate a danger or likelihood of danger" at the Site. 38 M.R.S. § 1365(1). Mallinckrodt argues that "necessary" means "absolutely required," such that the Court can only affirm the factual findings and conclusions if the remedy ordered is absolutely required based on the record evidence. If the Legislature had intended for the remediation measures ordered to be the only way in which the threat could be successfully addressed, the Legislature could have so specified. Simply stated, the standard is not as narrow as that urged by Mallinckrodt. Instead, the Court previously determined that "necessary" in the context of the UHSSL means that which is required under the circumstances after considering all the relevant evidence and law in light of the stated purpose of the UHSSL. *See* 38 M.R.S. § 1361 ("adequate measures must be taken to ensure that the threats posed by uncontrolled hazardous substance sites are abated, cleaned up or mitigated promptly"). As explained further below, the Court applies this standard in its review of the record, and concludes that the Board's decision is supported by substantial record evidence.

While the parties, including some of the expert witnesses, disagree as to measures necessary to remediate the Site, the Court's role is not to determine whether the remedial action advocated by Mallinckrodt is acceptable. In other words, "[t]he court shall not substitute its judgment for that of the agency on questions of fact." 5 M.R.S. § 11007(2). Instead, the issue is whether the remedy ordered by the Board is supported by substantial evidence on the record. Factual findings must be affirmed if "they are supported by substantial evidence in the record,

22

even if the record contains inconsistent evidence or evidence contrary to the result reached by the agency." *Concerned Citizens to Save Roxbury v. Bd. of Envtl. Prot.*, 2011 ME 39, ¶ 24, 15 A.3d 1263 (quotation marks omitted). When assessing the sufficiency of the Board's findings, including the Board's remediation mandates, the Court is mindful that the Board is governed by the Legislature's directive that, "adequate measures must be taken to ensure that the threats posed by uncontrolled hazardous substance sites are abated, cleaned up or mitigated promptly" and

> it is in the public interest of the State and its citizens to provide the capacity for prompt and effective planning and implementation of plans to abate, clean up or mitigate threats posed or potentially posed by uncontrolled sites. This paramount state interest outweighs any burden, economic or otherwise, imposed by this chapter.

38 M.R.S. § 1361.

The proceedings before the Board included nine days of evidentiary hearings and at least six pretrial hearings/conferences. During the proceedings, the parties introduced nearly 2,000 exhibits and the testimony of more than twenty expert witnesses. Therefore, not surprisingly, the record before the Board was voluminous. Without referencing all of the pertinent citations in the record, the Court is convinced that the Board properly perceived that the Site presents a legitimate threat to the health and welfare of the public and that significant remedial measures were necessary. For instance, the Board's findings that the levels of mercury, carbon tetrachloride, trichloroethylene and chloropicrin have been found in levels of concern in and around the wells associated with the various landfills are plainly supported by the record evidence.

The Board also appropriately considered a number of factors when assessing whether the remedial action required by the Commissioner was appropriate, or whether an alternative way of

23

remediation was adequate. That is, the Board assessed the nature of the groundwater contamination, the age and condition of the landfills, the availability and feasibility of alternative disposal sites, and the impact on air quality should the excavation of contaminated soil be required. For each issue, the Board evaluated the evidence, and reached conclusions that are supported by the record evidence, albeit often the subject of dispute between the parties.[7]

### 1. *Landfill 2*

Whether to remove Landfill 2, for instance, is an issue about which the parties disagree and is exemplary of the nature of the parties' overall dispute. The Department argued that Landfill 2 is leaking, that geoprobe wells in the vicinity of Landfill 2 were found to have unacceptable levels of mercury, that because of some design deficiencies in Landfill 2, clean groundwater can be contaminated when it enters the waste, and that other proposed remediation measures are insufficient to address the problem. Mallinckrodt contends that the area around Landfill 2, as reflected partly by groundwater samples, does not present a threat to public safety or the environment, and that engineering controls can adequately address any concerns about Landfill 2.

After considering the parties' arguments, the Board concluded,

The Board finds that the removal of Landfill 2 is necessary to terminate or mitigate the danger or likelihood of danger to public health and safety and the environment from the hazardous substances in this landfill. The Board bases its conclusion on the factual findings as set forth above [in the Board's Findings of

---

[7] One of Mallinckrodt's arguments is that the cost of the remediation ordered by the Board is unnecessarily high, when compared to alternative measures that, according to Mallinckrodt, are just as effective. The cost of a particular means of remediation is only relevant to the extent that it reflects the need for, or the lack of need for, the mandated remediation. In other words, the Court can conceive of situations in which the cost of particular remediation is exorbitantly high because it includes measures that were not contemplated by any of the expert testimony, or not reasonably related to cleaning up the hazardous condition. In such a case, if the Board ordered the remediation, the Board's decision would likely not be supported by the record evidence. In this case, however, there is no persuasive evidence to support a finding that cost of the remediation ordered by the Board is indicative of unnecessary or unrelated work. The Board, therefore, properly did not consider cost as a factor when determining which remedy was necessary "to ensure that the threats posed by uncontrolled hazardous substance sites are abated, cleaned up or mitigated promptly." 38 M.R.S. § 1362 (2011).

24

Fact and Order on Appeal], particularly the nature of the wastes placed in the landfill, the mercury found in the sediment downstream of this landfill, the undisputed need to isolate wastes from ground and surface waters, the fact that the landfill is located in a topographic depression and the waste is in contact with groundwater at certain times of the year, the lack of a synthetic cover, the location of the landfill directly adjacent to the Southerly Stream, and the groundwater flow routes. The Board is not persuaded that Mallinckrodt's proposal to install a new cap, a sheet pile wall, and a geomembrane cover underneath Southerly Stream is sufficient to protect public health and safety and the environment.

(A.R. 344 at 34-35.)

The Board's role was not to analyze and all of the different proposals as offered, and determine which option achieved that which was minimally necessary to remediate the problem. As discussed above, the Board's task was to determine which measures were required to address the risk to public safety after considering all the relevant evidence and law and in light of the stated purpose of the UHSSL. Thus, the fact that the Board rejected an engineering solution that might have abated the hazardous conditions is not controlling. Given the nature of the concerns in and around Landfill 2, the Board's decision to order the removal of Landfill 2 is supported by record evidence. *See Concerned Citizens to Save Roxbury*, 2011 ME 39, ¶ 24, 15 A.3d 1263.

2. *Replacing the caps on Landfills 3, 4, and 5*

Mallinckrodt argues that because the existing caps on Landfills 3, 4, and 5 are stable and in good condition, the installation of new caps is not necessary. Mallinckrodt asserts that the Board ordered the replacement of the caps because the installation of the existing caps was not well documented, the condition is currently unknown, and therefore uncertainty about the future ability of the caps requires replacement. Mallinckrodt argues that the mere uncertainty about the future of the existing caps does not justify their replacement at this time. In essence, Mallinckrodt contends that because the existing caps' respective contaminant levels can be

25

monitored adequately through the current groundwater wells, replacement of the caps is not necessary.

The Board found, however, that given the risk of groundwater contamination from the three landfills, the issues regarding the existing caps were of sufficient concern to warrant replacement of the caps in order to protect health, safety, and the environment. (A.R. 344 at 38-39.) In other words, the Board determined that the risk posed by the caps militated against further monitoring of the caps and in favor of replacement of the caps. Although there was conflicting testimony regarding the three landfills, given the uncertainty about the current condition of each of the caps, and given the irregularities with the installation of the caps, the Board's decision to replace them is supported by evidence on the record. *See Concerned Citizens to Save Roxbury*, 2011 ME 39, ¶ 24, 15 A.3d 1263 (the court "must affirm findings of fact if they are supported by substantial evidence in the record, even if the record contains inconsistent evidence or evidence contrary to the result reached by the agency." *citing, Friends of Lincoln Lakes v. Bd. of Envtl. Prot.*, 2010 ME 18, ¶ 13, 989 A.2d 1128, 1133.)

3. *Mandatory groundwater sampling and monitoring*

Mallinckrodt argues that there is no basis in the record to require the monitoring of groundwater contaminants outside of the primary contaminants of concern at the Site: mercury, chloropicrin, and carbon tetrachloride. Contrary to Mallinckrodt's argument, the record supports the Board's monitoring requirement given the multiple contaminants at the Site that pose a risk to public health, safely and the environment.

4. *Independent oversight position*

Mallinckrodt contends that the record does not support the hiring of a third-party overseer because Mallinckrodt has been cooperative in this entire process. Mallinckrodt also argues that

26

mandatory oversight by a third party has not been previously utilized without the consent of all parties. The Board, however, determined that given the complexity of the project, and the limited DEP resources, a third-party inspector is necessary to address the likelihood of danger from the project. Given the nature and extent of the remediation that is necessary, and given the protracted process to date, the Board's decision to require oversight is supported by substantial evidence on the record.

### 5.    *Additional studying and modeling at the Site*

Mallinckrodt asserts that the need for further studying and modeling at the Site is not supported by the record because the current Site is well characterized and has been studied exhaustively for the last two decades. While the record reflects some conflicting testimony regarding the condition of the Site and its effects on surrounding groundwater, the extent of the contamination and the risk to public health, safety and the environment support the Board's decision to require additional studying and monitoring of groundwater.

### 6.    *Sequencing of remedial activities*

Mallinckrodt argues that the sequencing of the remedial measures is arbitrary and capricious. Mallinckrodt contends that it is unnecessary to complete the additional studies before the removal of Landfill 1, the primary source of contamination. Landfill 1 is not scheduled to be removed until later, and Mallinckrodt asserts that additional studies before removal of the Landfill will unduly delay the project. Not insignificantly, the decision only includes a proposed schedule, listing the priorities for the Site, but also gives the Department the discretion to "determine the appropriate sequence of tasks and modify the sequence as circumstances warrant." (Decision 64.) The Board thus incorporated the potential for some flexibility into the sequence of the remediation efforts. Rather than reflect an arbitrariness in the process, the

27

Board's decision is rational, and reflects the practical considerations generated by the record evidence. The Board's decision is, therefore, supported by substantial evidence on the record.

## CONCLUSION

Based on the foregoing analysis, the Court AFFIRMS the Board's decision.

Pursuant to M.R. Civ. P. 79(a), the Clerk shall incorporate this Decision and Order into the docket by reference.

Date: 10/31/12

_____
Justice, Maine Business & Consumer Court

28

BCD-AP-11-02
Mallinckrodt US LLC, et al.
v.
Maine Department of Environmental Protection

Counsel for Petitioner:
Jeffrey Talbert, ESQ.
Preti Flarherty Believeau
PO Box 9546
Portland ME  04112-9546

Counsel for Respondent:
Peter B. Lafond AAG
Office of the Attorney General
6 State House Station
Augusta ME  04333

STATE OF MAINE
CUMBERLAND, ss

BUSINESS AND CONSUMER COURT
Location: Portland
Docket No.: BCD-AP-11-02 ✓
Jc N - cuM - 1/25/2013

MALLINCKRODT US, LLC and
UNITED STATES SURGICAL CORP.,

      Petitioners,

v.

MAINE DEPARTMENT OF
ENVIRONMENTAL PROTECTION,

      Respondent

)
)
)
)
)
)
)
)
)
)
)
)
)
)

**ORDER**
(Motion to Dismiss)

Respondent Maine Department of Environmental Protection moves to dismiss,[1] pursuant to M.R. Civ. P. 12(b)(6), the independent claim asserted by Petitioners Mallinckrodt and United States Surgical Corp. (collectively, "Mallinckrodt") for violations of 42 U.S.C.S. § 1983 (LexisNexis 2002). The Department asserts that Mallinckrodt's section 1983 action is precluded because M.R. Civ. P. 80C provides Mallinckrodt with an exclusive and adequate remedy for all of its claims.

Mallinckrodt filed its petition for review of agency action on September 17, 2010, asserting various errors of both law and fact in the Maine Board of Environmental Protection's August 19, 2010, order (the "Order"). *See* 5 M.R.S. § 11007(4)(C) (2012) (stating grounds upon which a court may reverse or modify the decision of an administrative agency); M.R. Civ. P. 80C. Among the challenges to the Order asserted by Mallinckrodt as part of the administrative

---

[1] Respondent initially filed this motion on October 14, 2010, but the Court stayed action on the motion pending a decision on Mallinckrodt's appeal of the Maine Board of Environmental Protection's August 19, 2010, order. The Court affirmed the Board's order in full on October 31, 2012. The Court heard oral argument on the motion on December 20, 2012.

appeal were constitutional due process violations, claims of bias, and challenges to the exclusion of evidence of bias at the proceeding. *See* 5 M.R.S. § 11007(4)(C)(1), (3), (4). Mallinckrodt also asserted, in its section 1983 challenge to the Order, a due process violation based on structural bias. (Petition ¶¶ 202-18.) Both the Rule 80C claims and the section 1983 claim seek the same relief. (*See* Petition at 35-36.)

A motion to dismiss pursuant to M.R. Civ. P. 12(b)(6) "tests the legal sufficiency of the complaint and, on such a challenge, 'the material allegations of the complaint must be taken as admitted.'" *Shaw v. S. Aroostook Comm. Sch. Dist.*, 683 A.2d 502, 503 (Me. 1996) (quoting *McAfee v. Cole*, 637 A.2d 463, 465 (Me. 1994)). When reviewing a motion to dismiss, the court examines "the complaint in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." *Shaw*, 683 A.2d at 503.

The Department argues that M.R. Civ. P. 80C provides Mallinckrodt with an adequate remedy for its claim of bias and that remedy is exclusive. "[W]hen a legislative body has made provision, by the terms of a statute or an ordinance, for a direct means by which the decision of an administrative body can be reviewed in a manner to afford adequate remedy, such direct avenue is intended to be exclusive." *Fisher v. Dame*, 433 A.2d 366, 372 (Me. 1981); *accord Gagne v. Lewiston Crushed Stone Co.*, 367 A.2 613, 618 (Me. 1976). Thus, when an "agency's decision is reviewable pursuant to . . . M.R. Civ. P. 80C, that process provides the 'exclusive process for judicial review unless it is inadequate'" and will cause irreparable injury. *Antler's Inn & Rest., LLC v. Dep't of Pub. Safety*, 2012 ME 143, ¶ 14, -- A.3d --- (quoting *Gorham v. Androscoggin Cnty.*, 2011 ME 63, ¶ 22, 21 A.3d 115); *Fisher*, 433 A.2d at 372, 374. The exclusivity principle applies to independent claims for relief brought with administrative appeals,

2

such as a declaratory judgment action or a section 1983 action. *See Antler's Inn*, 2012 ME 143, ¶¶ 14-15, -- A.3d ---; *Sold, Inc. v. Town of Gorham*, 2005 ME 24, ¶ 15, 868 A.2d 172.

"Title 42 U.S.C.S. § 1983 provides a mechanism for a party to obtain relief for the acts of government officials who, while acting under color of state law, . . . cause the deprivation of a federal right."[2] *Antler's Inn*, 2012 ME 143, ¶ 14, -- A.3d --- (quotation marks omitted). In its section 1983 action, Mallinckrodt asserts the proceeding was tainted with structural bias resulting from conflicting roles of assistant attorney generals who prosecuted the case, but had advised the Board in the past, and the Board's reliance on technical staff of the Department. Mallinckrodt alleges these deficiencies resulted in a biased proceeding in violation of its right to due process. Mallinckrodt argues that because it was prevented from presenting evidence of bias during the administrative hearing and during the administrative appeal, the substance of its section 1983 claim has not been addressed in any forum.

First, the Court notes that a claim alleging the exclusion of evidence is not a cognizable section 1983 claim when an 80C process is available. *See Antler's Inn*, 2012 ME 143, ¶ 14, -- A.3d ---. Further, Mallinckrodt's claims of bias and due process violations fall squarely within the scope of 5 M.R.S. § 11007(C)(4). *See id.* ¶ 15. Third, the Court in fact addressed Mallinckrodt's arguments regarding the exclusion of evidence and constitutional violations in its Decision and Order dated October 31, 2012.[3] *See Adelman v. Town of Baldwin*, 2000 ME 91, ¶

---

[2] Because the Court resolves the motion on other grounds, the Court does not address the Department's argument that Mallinckrodt has failed to appropriately assert any claim against a "person," i.e., an individual official, as opposed to the entire Department. *See* 42 U.S.C.S. § 1983 (providing a cause of action against a "person").

[3] As explained in the October 31, 2012, Decision and Order, the Board recognized that "[i]n its review of the Commissioner's Order, the Board must determine whether 'hazardous substances are or were handled or otherwise came to be located' at the Site that 'may create a danger to the public health, to the safety of any person or to the environment.'" (A.R. 344 at 14 (quoting 38 M.R.S. § 1365(1) (2012).). Because the Board undertook an independent review of both the conditions at the site, and the appropriate remedy, whether the Commissioner's decision was influenced by political considerations was not pertinent to the Board's determination. In the 80C

7, 750 A.2d 577 (explaining allegations of bias asserted in an independent claim for relief are duplicative when those allegations are addressed in an administrative appeal). Finally, Mallinckrodt seeks no relief in its section 1983 claim separate from the relief it sought in its administrative appeal. *See Kane v. Comm'r of the Dep't of Health & Human Servs.*, 2008 ME 185, ¶ 32, 960 A.2d 1196.

In sum, because the administrative process provides Mallinckrodt with an adequate and thus exclusive remedy, because the Court addressed Mallinckrodt's challenges, and because Mallinckrodt seeks no unique relief in its independent claim, the Court concludes that Mallinckrodt's section 1983 claim must be dismissed. Accordingly, and based on the foregoing analysis, the Court GRANTS the Department's motion to dismiss Mallinckrodt's section 1983 claim.

Pursuant to M.R. Civ. P. 79(a), the Clerk shall incorporate this Decision and Order into the docket by reference.

Date: 1/25/13

Justice, Maine Business & Consumer Court

Entered on the Docket: 1·28·13
Copies sent via Mail _ Electronically ✓

---

proceeding, Mallinckrodt challenged the Board's exclusion of the evidence of political bias, which challenge the Court rejected. The issue was thus part of the Rule 80C action.

**BCD-AP-11-02**

**Mallinckrodt US LLC & United States Surgical Corporation    v.    Maine DEP**

Attorney for Mallinckrodt:
Jeffrey Talbert, Esq.
Preti Flaherty
PO Box 9546
Portland ME  04112


Attorney for Maine DEP:
Peter LaFond, AAG
Office of the Attorney General
6 State House Station
Augusta ME  04333

Attorney for Town of Orrington (Intervenor)
Edmone J. Bearor, Esq.
Rudman &  Winchell
PO Box 1401
Bangor ME  04402-1401

Attorney for Maine People's Alliance (Intervenor)
Eric and Cynthia Mehnert, Esq.
Hawkes & Mehnert
Six State Street, Ste 600
Bangor ME  04401